UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------
:
JOSE RODRIGUEZ, *et al.* :
: CASE NO. 1:08-CV-1892
Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Doc. Nos. 77, 81 & 82.]
CITY OF CLEVELAND, *et al.* :
:
Defendants. :
:
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Before the Court is an objection to Magistrate Judge McHargh's March 10, 2009 order filed by Plaintiffs Jose and Carmen Rodriguez (collectively, the "Plaintiffs"). [Doc. 77.] Defendant City of Cleveland and Defendant (Movant) Cuyahoga County Prosecutor's Office oppose the objection. [Doc. 81, 82.] For the following reasons, the Court **GRANTS** the Plaintiffs' objection and orders the Defendants to produce the transcripts of the grand jury proceedings in CR-483633 and CR-487888.

**I. Background**

Plaintiff Jose Rodriguez ("Rodriguez"), along with his wife, Carmen Rodriguez, has filed a 42 U.S.C. § 1983 lawsuit against Defendants City of Cleveland, former Lieutenant Robert Miller, Detectives Gerald Hall, Rasco Davis, and Brian Curry, Chief of Police Michael McGrath, and John Does 1-5 (collectively, the "Defendants"). This suit arises out of the actions taken by the Defendants in July 2006 and thereafter.

Plaintiff Rodriguez entered into a series of agreements in October 2004, December 2005, and January 2006 with Karen Palmer, the fiduciary of the estate of Eugene Palmer. [Doc. 43 at 4.]

Case No. 1:08-CV-1892
Gwin, J.

Ultimately, Palmer was to transfer the real estate, inventory, and equipment comprising M&M Auto Body and Towing ("M&M"), located at 7010 Harvard Avenue, Cleveland, Ohio, to Rodriguez. [*Id.*] Starting from January 2006, Rodriguez was responsible for operating M&M and paying for all the expenses associated with the business. [*Id.*]

On July 7, 2006, the Cleveland Police Department ("CPD") allegedly arrived at M&M and arrested Plaintiff Rodriguez based on information, provided by an anonymous informant, that he had received stolen property and possessed criminal tools. [*Id.* at 7-8.] The stolen property charge was based on an allegation that, on July 7, 2006, Rodriguez "did receive, retain, or dispose of property of another, knowing and having reasonable cause to believe it had been obtained through commission of a theft offense, to wit: a 2004 Ford F-350 white on white dump truck with a VIN # of 1FDWF37P34EB32882." [*Id.* at 9.] At the time of the arrest, Rodriguez apparently provided a receipt for $2,200.00 of the $3,200.00 purchase price of the vehicle that was suspected of being stolen. [*Id.* at 9.]

The first count of the arrest warrant on the possession of criminal tools charge was based on an allegation that Plaintiff Rodriguez "did possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally, to wit: ten ton floor jack, blue tool chest with tools, welding torch set on dolly." [*Id.*] The second count alleged that Rodriguez, on July 7, 2006, "did possess or have under his control, any substance, device, instrument, or article with purpose to use it criminally, to wit: a 1995 Freightliner flatbed truck bearing Ohio License Plate No. PFA5423 and bearing the VIN # of 1FV6GFAC6WH923275." [*Id.*]

A CPD inspection inventory list compiled on July 27, 2006 indicated that four other tow truck vehicles were seized from M&M in addition to the two mentioned in the warrant. [*Id.* at 10.] No

Case No. 1:08-CV-1892
Gwin, J.

charges were ever brought in connection with these vehicles. [*Id.*] The list also revealed the fact that no vehicle fitting the description of the allegedly stolen 2004 Ford dump truck was ever confiscated from M&M. [*Id.*]

On July 20, 2006, Plaintiff Rodriguez was indicted for criminal allegations arising out of his July 7, 2006 arrest; the case was assigned Cuyahoga County Criminal Case No. CR-483633. [*Id.*] A "property seized" list attached to and incorporated within the indictment indicated that the allegedly stolen vehicle bore the VIN #1FDAF56P04EA38188. [*Id.*] The fact that Rodriguez owned and had title to this vehicle is undisputed. [*Id.*] As a result, at trial, the State of Ohio amended the indictment, replacing this vehicle with the previously mentioned 2004 Ford dump truck bearing VIN #1FDWF37P34EB32882. [*Id.* at 11.] This dump truck, however, was never towed or confiscated from M&M. [*Id.*]

On July 13, 2006, Plaintiff Rodriguez was arrested a second time and the CPD once again searched M&M. [*Id.* at 12.] CPD officers "arrived with members of the television media who had been briefed on alleged criminal practices within the towing company business, and who then filmed as Plaintiff [Rodriguez] was arrested and escorted from [M&M], and collapsed, unconscious, on the ground." [*Id.*] Also at this time, M&M's remaining tow trucks were confiscated in furtherance of CPD's investigation, thereby permanently shutting down M&M. [*Id.*]

Following this confiscation, on July 14, 2006, AAA rescinded its towing contract with M&M due to M&M's failure to perform. [*Id.*] Also on this date, Plaintiff Rodriguez's employer, Gibraltar Strip Steel, Inc. ("Gibraltar") placed him on unpaid personal leave pending the disposition of the charges against him. [*Id.* at 13.] Gibraltar ultimately terminated Rodriguez on November 17, 2006. [*Id.* at 16.]

Case No. 1:08-CV-1892
Gwin, J.

On November 2, 2006, Plaintiff Rodriguez was indicted for a second time. [*Id.* at 14.] The list of property seized accompanying the indictment indicated that only one item had been seized from Rodriguez: a 2002 Ford F-450 Superduty tow truck, with VIN #1FDAFS6F7YED33463. [*Id.*] At trial, Defendant Robert Miller, the head of the CPD Auto Theft Investigation Unit, admitted that the 2002 Ford tow truck was not stolen, but said that its engine was stolen. [*Id.*] A review of the CPD's inspection inventory list for July 13, 2006 indicated that no vehicle possessing this VIN # was ever seized or towed from M&M. [*Id.*] Rodriguez was also indicted in the second case (CR-487888) for possession of criminal tools "to wit: engine parts" and other articles intended for use in the commission of a felony. [*Id.*] These items are not listed as having been confiscated on July 13, 2006 or on any other date on either the "property seized" list or the inspection inventory list. [*Id.* at 14.]

On January 30, 2007, Cuyahoga County Common Pleas Judge Joan Synenberg dismissed the felony charges against Plaintiff Rodriguez. [*Id.* at 18.] Judge Synenberg also ordered that all property belonging to M&M and Rodriguez be returned to Rodriguez. [*Id.*] On February 27, 2007, Rodriguez received all of his previously seized property from the Defendants, [*id.*], although the holds on the titles of the seized vehicles were only removed on October 31, 2008. [*Id.* at 21.]

The Plaintiffs filed a Complaint against the Defendants in the Cuyahoga County Court of Common Pleas on July 11, 2008. The case was removed to this Court on August 6, 2008. [Doc. 1.] During the discovery process, the Plaintiffs filed a motion to compel the production of the grand jury transcripts in Criminal Case Nos. 483633 and 487888. [Doc. 41.] The Defendants opposed this motion. [Docs. 46, 51.] On March 10, 2009, Magistrate Judge McHargh denied the Plaintiffs' motion to compel discovery of the grand jury transcripts and granted Defendant Cuyahoga County Prosecutor's Office's motion to quash *supboena duces tecum* after examining the grand jury

Case No. 1:08-CV-1892
Gwin, J.

transcripts *in camera*. [Doc. 71.]

## II. Legal Standard

Under 28 U.S.C. § 636(b)(1)(A), "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court . . . . A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *See O'Brien v. Ed Donnelly Enterprises, Inc.*, No. 2:04-CV-85, 2007 WL 81843, at *1 (S.D. Ohio Jan. 8, 2007) ("28 U.S.C. § 636(b)(1)(A), requires this Court to apply a 'clearly erroneous or contrary to law' standard of review for decisions of magistrate judges on nondispositive motions."); *see also United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).

A decision "is clearly erroneous when, although there may be evidence to support it, the reviewing court, utilizing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Shank*, 543 F.3d 309, 312 -313 (6th Cir. 2008) (citing *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007)).

## III. Analysis

The Plaintiffs argue that Magistrate Judge McHargh's decision to deny their motion to compel discovery of the transcripts of the grand jury proceedings in CR-483633 and CR-487888 was clearly erroneous or contrary to law. Because the Court agrees with the Plaintiffs, it **GRANTS** the Plaintiffs' objection and orders the Defendants to produce the transcripts of the grand jury proceedings in CR-483633 and CR-487888.

The Magistrate Judge correctly identified the law controlling the disclosure of grand jury

Case No. 1:08-CV-1892
Gwin, J.

transcripts in subsequent civil actions. [Doc. 77 at 2.] Namely, he noted that these transcripts can be disclosed in the court's discretion where justice requires, but before the court could order disclosure the petitioner must demonstrate a "particularized need" for the transcripts that outweighs the need to maintain the secrecy of grand jury proceedings and the court must determine "that justice can only be done if disclosure is made." *Petition for Disclosure of Evidence Presented to Franklin Cty. Grand Juries in 1970*, 407 N.E.2d 513, 518 (Ohio 1980).

Further, the Magistrate Judge highlighted the Supreme Court's decision in *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211 (1979) that concerned the importance of preserving secrecy versus the petitioner's need for the grand jury testimony. The reasons for preserving the secrecy of grand jury proceedings are: (1) to prevent the escape of individuals who may be indicted; (2) to insure that the grand jury has the utmost freedom in its deliberations and to prevent persons subject to indictment or others from importuning the grand jurors; (3) to prevent tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; and (5) to protect innocent individuals who are exonerated by the grand jury from disclosure of the fact that they were under investigation and from the expense of standing trial where there was no probability of guilt. *Id.* at 219 n. 10.

The Magistrate Judge correctly determined that it was appropriate to make an initial determination regarding the extent of the Plaintiffs' need for the grand jury transcripts before weighing that need against continuing concerns about maintaining grand jury secrecy. [Doc. 77 at 3.] He then denied the Plaintiffs' motion to compel after concluding that the Plaintiffs had failed to establish a "particularized need" for the transcripts and that justice could only be done if disclosure

Case No. 1:08-CV-1892
Gwin, J.

was made. [Doc. 77 at 7.]

Although there may be evidence supporting the Magistrate Judge's decision, after reviewing it while considering the case in its entirety, the Court "is left with the definite and firm conviction that a mistake has been committed." *Shank*, 543 F.3d at 312 -313 (citations omitted).

Contrary to the Magistrate Judge's characterization, the Plaintiffs do not articulate "generalized fears about potential future injustices" in attempting to establish their particularized need for the transcripts. [Doc. 77 at 7.] Instead, they specifically seek to "once and for all determine exactly what testimony or evidence was presented in order for the [g]rand [j]ury to indict Plaintiff Jose Rodriguez," [Doc. 41 at 10], and to "understand how a [g]rand [j]ury could have possibly returned an indictment thereby finding probable cause under the factual scenario that was revealed at trial." [*Id.* at 11.] The Plaintiffs note that "'particularized need' is self-evident because the [Plaintiffs'] main thrust against [the] Defendants attacks the very issue of probable cause for the police to enter upon the property, arrest Plaintiff Jose Rodriguez on two occasions, and seize all his business property in such a way that it shuttered M&M Towing forever." [*Id.*]

The Magistrate Judge himself pointed out that the transcripts of the grant jury proceedings at issue would be invaluable in helping the Plaintiffs rebut the presumption of the existence of probable cause that is created when the grand jury returns an indictment: "A plaintiff may rebut this presumption by producing 'substantial' evidence that the return of the indictment resulted from perjury or 'that the grand jury proceedings were otherwise []significantly[] irregular.'" [Doc. 77 at 7.] (citations omitted). Despite this fact, the Magistrate Judge went on to state that the "Plaintiffs do not explain why it is necessary for them to get hold of the grand jury transcripts in order to maintain their cause of action for malicious prosecution." [*Id.*] Further, the Magistrate Judge

-7-

Case No. 1:08-CV-1892
Gwin, J.

appeared to argue that the Plaintiffs could "rebut the presumption [of probable cause] without consulting the grand jury transcripts themselves" while citing to a case in which there was evidence independent of the grand jury proceeding demonstrating that the only witness against the plaintiffs had lied while testifying before the grand jury. [*Id.* at 6.] No such evidence exists in this case and, in any event, a comparison between current testimony and the grand jury testimony would be necessary to determine whether the witnesses against Plaintiff Rodriguez had committed perjury or if the grand jury proceedings were otherwise irregular.

The Plaintiffs have thus demonstrated a particularized need for the grand jury transcripts and that justice would only be done if the transcripts were released to them. It is difficult to imagine how the Plaintiffs would be able to rebut the inference of probable cause that exists in this case without use of the transcripts. Further, although the Magistrate Judge did not reach this point, the reasons for preserving the secrecy of grand jury proceedings do not apply in this case. The Magistrate Judge's decision to deny the Plaintiffs' motion to compel the release of the transcripts of the grand jury proceedings in CR-483633 and CR-487888 was therefore clearly erroneous.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Plaintiffs' objection and orders the Defendants to produce the transcripts of the grand jury proceedings in CR-483633 and CR-487888.

IT IS SO ORDERED.

Dated: March 30, 2009                         s/      *James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE