UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------
                                          :
JOSE RODRIGUEZ, *et al.*                  :
                                          :     CASE NO. 1:08-CV-1892
                  Plaintiffs,             :
                                          :
vs.                                       :     OPINION & ORDER (AMENDED)
                                          :     [Resolving Doc. Nos. 90, 101, 117 & 147.]
CITY OF CLEVELAND, *et al.*               :
                                          :
                  Defendants.             :
                                          :
-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Karen Palmer and Plaintiffs Jose and Carmen Rodriguez (collectively, the "Plaintiffs") move for partial summary judgment in this 42 U.S.C. § 1983 action. [Docs. 90, 101.] Defendants City of Cleveland, Robert Miller, Gerald Hall, Rasco Davis, and Michael McGrath (collectively, the "Defendants") cross-move for summary judgment. [Doc. 117.] The Defendants also oppose the motions for partial summary judgment filed by the Plaintiffs, [Doc. 118], while the Plaintiffs oppose the summary judgment motion filed by the Defendants, [Doc. 126.] For the following reasons, the Court **GRANTS** the partial summary judgment motion of the Rodriguez Plaintiffs, **DENIES** the partial summary judgment motion of Plaintiff Palmer, and **GRANTS** the Defendants' summary judgment motion with respect to the following claims: (1) Palmer's Fourth Amendment search and seizure claim; (2) Palmer's Fourth and Fifth Amendment malicious prosecution and illegal attachment claim; (3) the Rodriguez Plaintiffs' malicious, wanton conduct claim; (4) the Rodriguez Plaintiffs' intentional infliction of emotional distress claim; (5) the

-1-

Case No. 1:08-CV-1892
Gwin, J.

Rodriguez Plaintiffs' malicious abuse of process claim; and (6) the Rodriguez Plaintiffs' loss of

consortium claim.

## I. Background

Plaintiff Jose Rodriguez ("Rodriguez"), along with his wife, Carmen Rodriguez, has filed

a 42 U.S.C. § 1983 lawsuit against Defendants City of Cleveland, former Lieutenant Robert Miller,

Detectives Gerald Hall, Rasco Davis, and Brian Curry, Chief of Police Michael McGrath, and John

Does 1-5.  This suit arises out of the actions taken by the Defendants in July 2006 and thereafter.

Plaintiff Karen Palmer, who sold or was in the process of selling certain property to Rodriguez that

was allegedly subject to the Defendants' actions, is also a party to this case.[1/]

Plaintiff Rodriguez entered into a series of agreements in October 2004, December 2005, and

January 2006 with Plaintiff Karen Palmer, the fiduciary of the estate of Eugene Palmer.[2/]  [Doc. 90-1

at 1.] Under their agreements, Palmer was to transfer to Rodriguez the real estate, inventory, and

equipment  comprising M&M Auto Body and Towing ("M&M"), located at 7010 Harvard Avenue,

Cleveland, Ohio.  [Id. at 2.]  Starting from January 2006, Rodriguez operated M&M and paid all of

the expenses associated with the business.  [Id.] The sale documents and lease agreement stated,

however, that the completion of the sale of M&M and the other assets could take up to a year from

the date that the documents were signed (January 21, 2006) or at least until December 31, 2006.

[Doc. 101-1 at 3.] Further, according to the Plaintiffs, they had an understanding that Palmer had full

ownership of the all of the assets included in the sale documents, including M&M itself, until

---

[1/]The *Rodriguez* and *Palmer* cases were consolidated for trial on February 11, 2009. [Doc. 48.]

[2/]Palmer entered into the following agreements with Rodriguez with respect to the sale of M&M: (1) Letter of Intent dated December 21, 2005; (2) Purchase Agreement dated January 21, 2006; (3) Asset Purchase Agreement dated January 21, 2006; and (4) Lease Agreement. [Doc. 101-1 at 2-3.]

Case No. 1:08-CV-1892
Gwin, J.

Rodriguez finished paying for these assets.  [*Id.*]

On July 7, 2006, members of the Cleveland Police Department ("CPD")[3/] arrived at M&M and arrested Plaintiff Rodriguez based solely upon information provided by an anonymous informant that Rodriguez had received stolen property and possessed criminal tools.  [Doc. 90-1 at 4.] According to Defendant Hall, in the morning of July 7, 2006, he received a call at the CPD's Auto Theft Investigation Unit from "someone saying he had information about a stolen [white] dump truck [in the back corner of the side lot next to the M&M building] . . . . He [also] said the dump truck didn't run, and had been towed to M&M using an M&M tow truck." [Doc. 117-5 at 1-2.] This individual stated that he had been a former, long-time employee of M&M. [*Id.* at 1.] The informant did not leave his name or contact information; Hall gave the informant his cell phone number and told him to call if he had any other information.  [*Id.* at 2.]

Hall told Miller about the tip and, later in the day, Hall, Miller, and Detective Rasco Davis went to M&M to conduct a § 601.15 inspection.[4/] [*Id.*] The officers did not have a warrant.  [Doc.

---

[3/] Specifically, members of the CPD's Auto Theft Investigation Unit (the "Unit"), which consisted of Lieutenant Robert Miller (retired in September 2007), senior Detectives Joseph Ferenec and Gerald Hall, and Detective Rasco Davis. [Doc. 117-4 at 1.] According to Miller, Detective Brian Curry joined the Unit on July 31, 2006 and was therefore not involved in the Rodriguez matter. [*Id.*]

[4/] A 601.15 inspection is conducted pursuant to Cleveland Codified Ordinance § 601.15.  This Ordinance states:

(a) For the purpose of locating stolen motor vehicles and/or stolen motor vehicle parts, the Chief of Police, or his authorized representative, may inspect any motor vehicle, as defined in RC 4501.01 and may inspect any motor vehicle part that has been marked with an identifying number by the manufacturer, situated in the City of Cleveland in any public garage, community garage, storage garage, service garage, repair shop, parking lot, auto sales lot, vehicle leasing or rental lot, motor vehicle salvage facility, scrap metal processing facility, auto wrecking yard, junk yard, or other similar establishment, and may inspect the title, registration, vehicle identification number, or license plates of the vehicle in order to establish the rightful ownership or possession of the vehicle or vehicle part.

 (b) For the purpose of locating a stolen vehicle, the Chief of Police, or his authorized representative, may inspect implements of husbandry and construction equipment in places described in division (a) of this section.

(continued...)

-3-

Case No. 1:08-CV-1892
Gwin, J.

90-1 at 4.] When the officers arrived at M&M, they told Plaintiff Rodriguez that they were there to

do an inspection and he unlocked the gate to the lot and showed them the shop floor. [Doc. 117-5

at 2.]  The officers requested a zone car with uniformed CPD officers apparently to assist in running

the VIN numbers of the vehicles.  [*Id.*] While Davis and Hall were outside inspecting vehicles, Hall

saw a vehicle matching the description provided to him by the anonymous informant – a 2004 Ford

Carry-All with Vin # 1FDWF37P34EB32882. [*Id.*] According to Hall, this vehicle had cut marks

in places where large equipment would normally be, including the plow and the hydraulic lift; the

dump truck's steering column was also missing. [*Id.*] The officers ran the vehicle's VIN number and

discovered that it had been reported stolen from Medina in 2006.  [*Id.* at 3.] After Hall told

Rodriguez that the vehicle had been reported stolen, a woman working at M&M allegedly provided

them with a receipt for $2,200.00 of the $3,200.00 purchase price of the vehicle that was suspected

of being stolen.[5] [Doc. 90-1 at 9.] At this point, Hall arrested Rodriguez for being in possession of

the stolen dump truck and criminal tools (tools that Hall believed had been used to disassemble the

---

[4]/(...continued)
(c) Whenever possible, inspections conducted pursuant to division (a) or (b) of this section shall be
conducted at a time and in a manner so as to minimize any interference with, or delay of, business
operations.

(d) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance
of a police officer from inspecting any place described in division (a), shall do any act which hampers
or impedes a police officer from making an inspection pursuant to this Section.

Whoever violates this Section is guilty of obstructing vehicle inspections, a misdemeanor of the second
degree.

[5]/Hall states that this receipt, in the form of an M&M repair order, was handwritten, showed a date of 4/6/06,
the name "Brian Miller," the phone number "440-521-4131," and "something about money paid and a balance owed on
4/5/06."  [Doc. 117-5 at 3.] Hall also states that the signature was illegible, there was no vehicle listed on the receipt,
and that, following an investigation, he was unable to find any information on Brian Miller. [*Id.*]

-4-

Case No. 1:08-CV-1892
Gwin, J.

truck)[6/] and requested that the truck be towed.  [Doc. 117-5 at 3.]

The stolen property charge alleged that, on July 7, 2006, Rodriguez "did receive, retain, or dispose of property of another, knowing and having reasonable cause to believe it had been obtained through commission of a theft offense, to wit: a 2004 Ford F-350 white on white dump truck with a VIN # of 1FDWF37P34EB32882."  [Doc. 90-1 at 6; Doc. 90-3 at 1.]

In addition to the charge mentioned above, one count of the arrest warrant – issued on July 9, 2006 – alleged that Plaintiff Rodriguez "did possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally, to wit: ten ton floor jack, blue tool chest with tools, welding torch set on dolly."  [Id. at 6; Doc. 90-3 at 3.] Another count alleged that Rodriguez, on July 7, 2006, "did possess or have under his control, any substance, device, instrument, or article with purpose to use it criminally, to wit: a 1995 Freightliner flatbed truck bearing Ohio License Plate No. PFA5423 and bearing the VIN # of 1FV6GFAC6WH923275." [Doc. 90-3 at 5.] According to Rodriguez, the latter criminal allegation was never pursued.  [Doc. 90-1 at 7.]

While at M&M on July 7, 2006, Defendant Miller apparently noticed that the M&M tow trucks that were returning back to M&M along Harvard Avenue did not have proper markings on the side and did not have tow truck license plates on the bumpers in violation of Cleveland Codified Ordinance § 677A.10.[7/]  [Doc. 117-4 at 2.] Miller instructed Defendant Davis to check each truck

---

[6/]While still at M&M after arresting Rodriguez on July 7, 2006, Hall indicates that he got a call on his cell phone from the anonymous informant, who told Hall that he was across the street from M&M and asked if Hall could see him. [Id.] Hall states that he could not see the informant.  [Id.] The informant insisted that one of the M&M tow trucks had a stolen engine and Hall passed this information on to Miller.  [Id. at 4.] Based solely on this information, Hall subsequently got Miller's permission to check the VIN numbers of all of the engines in the M&M trucks. [Id.]

[7/]This Ordinance states:

(continued...)

-5-

Case No. 1:08-CV-1892
Gwin, J.

for violations of this Ordinance. [*Id.*] According to Davis, none of the tow trucks he saw were licensed by the City of Cleveland or had the required license plates displayed on the bumper. [Doc. 117-7 at 1.] After Davis conveyed this information to Miller, Miller authorized the impounding of these tow trucks. [Doc. 117-4 at 2.]

On July 10, 2006, after being in jail for three days, Rodriguez appeared before a Cleveland Municipal Court judge, posted $15,000 for bail, and was released. [Doc. 90-1 at 7.] Three days later, on July 13, 2006, Rodriguez states that Detective Miller requested that Rodriguez meet with him at M&M.[8] [*Id.*] At that time, CPD officers "arrived with members of the television media who had been briefed on alleged criminal practices within the towing company business, and who then filmed as Plaintiff [Rodriguez] was arrested and escorted from [M&M], and collapsed, unconscious, on the ground."[9] [*Id.*] The basis for Rodriguez's second arrest was the allegation that an engine in an

---

[7](...continued)
Any person engaged in the business of offering towing services shall have imprinted on both sides of any vehicle used as a tow truck, slide or tilt-bed carrier, or car hauler, the name, address and telephone number of the person owning such vehicle. The name shall be printed in letters at least three inches high and not less than three-eighths of an inch wide, while the address, place and phone number shall be in letters two inches high and not less than three-eighths of an inch wide. Lettering shall be done in color which will contrast sharply with the background upon which it is painted and shall be placed in such position as to be easily seen by anyone wishing to identify the vehicle. Markings shall be kept clear and distinct at all times.

Anyone who violates this provision "shall be guilty of a misdemeanor of the second degree and shall be fined not more than seven hundred fifty dollars ($750.00) or imprisoned not more than ninety days, or both. Any such violation shall constitute a separate offense on each consecutive day continued." § 677A.99.

[8]On July 13, 2006, Detective Hall was "processing M&M tow trucks," [Doc. 117-5 at 4], at the impound lot with Detectives Davis and Ferenec and other individuals who are not defendants in this case. Hall discovered that the engine in a tow truck with a VIN number ending in -13707 was apparently stolen. [*Id.*] Hall called Detective Miller and informed him about the stolen engine and Miller authorized Hall to arrest Rodriguez. [Doc. 117-4 at 3.] After the officers arrived at M&M, Hall arrested Rodriguez. [Doc. 117-5 at 5.]

[9]The Defendants state that they did not notify the news media about the arrest.

Case No. 1:08-CV-1892
Gwin, J.

M&M-owned vehicle that was confiscated from Rodriguez on July 7, 2006 was stolen.[10/] [*Id.*] While

at M&M, the CPD confiscated M&M's remaining tow trucks,[11/] because, according to Defendant

Hall, they did not have the required City of Cleveland towing licenses on the bumpers, [Doc. 117-4

at 5], thereby permanently shutting down M&M.[12/] [Doc. 90-1 at 8.] Either Rodriguez or M&M held

title to the confiscated trucks.  [*Id.* at 9.] In effect, the Defendants confiscated M&M's most

important business assets, though these tow trucks were owned by M&M.

    The Defendants' confiscation of M&M's tow trucks spelled disaster for M&M.  Before the

confiscation, AAA had a towing services contract with M&M.  Following the confiscation, on July

14, 2006, AAA rescinded its towing contract with M&M due to M&M's failure to perform.  [*Id.* at

8.] Also on this date, Plaintiff Rodriguez's employer, Gibraltar Strip Steel, Inc. ("Gibraltar"), placed

him on unpaid personal leave pending the disposition of the charges against him.  [*Id.*; Doc. 90-3 at

7.] Gibraltar ultimately terminated Rodriguez's employment on November 17, 2006. [Doc. 90-1 at

12; Doc. 90-3 at 38.]

    Plaintiff Rodriguez was released from jail following his second arrest on July 14, 2006

without any criminal charges being filed against him.  [Doc. 90-1 at 9.] On this date, Defendant

Davis issued summons for misdemeanor citations on nine of Rodriguez's tow trucks for violations

of Ordinance § 677A.02. [Doc. 117-7 at 1-2.]  Rodriguez states that M&M's PUCO permit that he

_____

    [10/]On July 14, 2006, Rodriguez's attorney, Edward La Rue, sent a letter to Miller informing him, in the interest
of full cooperation, that "truck #400 . . . *may* have an engine of questionable origin." [Doc. 117-4 at 5.]

    [11/]A CPD inspection inventory list compiled on July 27, 2006 indicated that five tow truck vehicles were seized
from M&M on July 7, 2006. [*Id.* at 5.] These vehicles were never reported stolen and were titled to either M&M or
Rodriguez. [*Id.*]  The list also revealed the fact that no vehicle fitting the description of the allegedly stolen 2004 Ford
dump truck was ever confiscated from M&M.  [*Id.* at 5-6.]

    [12/]Miller authorized Hall to process these trucks for stolen parts during impound. [Doc. 117-4 at 5.] On
July 14, 2006, Hall apparently discovered that the engine of one of the trucks had its serial number ground off. [*Id.*]

Case No. 1:08-CV-1892
Gwin, J.

obtained on June 15, 2006 negated the need for local tow truck licenses. [Doc. 90-1 at 9-10; *see also* Doc. 90-2 at 27-28.]

On July 20, 2006, Plaintiff Rodriguez was indicted for criminal allegations arising out of his July 7, 2006 arrest; the case was assigned Cuyahoga County Criminal Case No. CR-483633. [Doc. 90-1 at 10.] A "property seized" list attached to and incorporated within the indictment indicated that the allegedly stolen vehicle bore the VIN #1FDAF56P04EA38188. [*Id.*] The fact that Rodriguez owned and had title to this vehicle is undisputed. [*Id.*; *see also* Doc. 90-3 at 25.] As a result, at trial, the State of Ohio amended the indictment, replacing this vehicle with the previously mentioned 2004 Ford dump truck bearing VIN #1FDWF37P34EB32882. [Doc. 90-1 at 10 n. 1; Doc. 90-11 at 3-4.] However, Cleveland never towed or confiscated this dump truck from M&M. [Doc. 90-11 at 3-4.]

On November 2, 2006, Plaintiff Rodriguez was indicted for a second time for allegations arising out of his July 13, 2006 arrest; this case was assigned Cuyahoga County Criminal Case No. CR-487888. [Doc. 90- 1 at 13] The list of property seized accompanying the indictment indicated that only one item had been seized from Rodriguez: a 2002 Ford F-450 Superduty tow truck, with VIN #1FDAFS6F7YED33463. [Doc. 90-11 at 9.] Rodriguez was also indicted in the second case for possession of criminal tools "to wit: engine parts" and other articles intended for use in the commission of a felony. [*Id.* at 13, 15.] At trial, Defendant Miller admitted that the indictment was incorrect and that the 2002 Ford tow truck was not stolen, although its engine was stolen. [*Id.* at 15.]

Through counsel, on August 28, 2006, Plaintiff Rodriguez requested the return of all vehicles not subject to criminal allegations. [Doc. 90-3 at 17.] A Cuyahoga County Court of Common Pleas judge granted this motion on August 29, 2009, [*id.* at 29], although Rodriguez's property and

Case No. 1:08-CV-1892
Gwin, J.

vehicles were apparently not returned to him until February 27, 2007.[13/]

On September 10, 2006, Plaintiff Rodriguez and Plaintiff Palmer executed a Termination and Mutual Release Agreement resulting in the cancellation of the other agreements concerning the sale, lease, and purchase of M&M and its assets. [*Id.* at 40-41.] Palmer entered into this agreement after apparently learning of Rodriguez's arrests and the seizure of M&M's assets from the news media,[14/] [Doc. 101-1 at 5], because she understood that Rodriguez would be unable to satisfy his contractual obligations, including continuing to pay rent and complete the purchase of M&M, and because she wanted to get M&M's assets back into her possession, [*id.* at 5-6.]

On January 30, 2007, after several days of trial, the presiding Cuyahoga County Common Pleas Judge dismissed the felony charges against Plaintiff Rodriguez pursuant to Ohio Rule of Criminal Procedure 29. [Doc. 90-11 at 16.] The Judge also ordered that all property belonging to M&M and Rodriguez be immediately returned to Rodriguez. [Doc. 90-3 at 42-43.] According to Plaintiff Palmer, after the assets were eventually released, she liquidated them to the best of her ability, although she had to sell them for a lower price than that originally offered by Rodriguez. [Doc. 101-1 at 5.]

On August 6, 2008, the Rodriguez Plaintiffs sued the Defendants in this Court. [Doc. 1.] Rodriguez made the following claims against the Defendant in his Third Amendment Complaint:

---

[13/]The Defendants allege that Rodriguez could have regained possession of the tow trucks pursuant to Cleveland Codified Ordinance § 405.05 if he (1) paid a nominal towing charge and storage fee and any outstanding fines in connection with the violation; (2) posted a bond, whereupon the vehicles would be released, on the condition that he would appear in municipal court to answer the violation; or (3) requested a probable cause hearing for the following business day, whereupon the vehicles would be released upon a finding of no probable cause. According to the Defendants, Rodriguez did not take any of these actions. This Ordinance does not pertain to vehicles towed from private property, however.

[14/] According to Palmer, no one from the CPD ever contacted her to investigate whether she owned any of the property that the CPD had seized from M&M or to ask about her contractual relationship with Rodriguez. [Doc. 101-1 at 6.]

Case No. 1:08-CV-1892
Gwin, J.

(1) a claim made under 42 U.S.C. § 1983 alleging an unreasonable search and seizure in violation of the Fourth Amendment; (2) a claim made under § 1983 for a failure to intercede or intervene; (3) a claim made under § 1983 for conscience-shocking and outrageous conduct in violation of the Fourteenth Amendment; (4) a claim made under § 1983 for false arrest and imprisonment in violation of the Fourth Amendment; (5) a claim made under § 1983 for an intentional omission of exculpatory evidence while seeking to obtain indictments in violation of the Due Process Clause of the Fourteenth Amendment; (6) a claim made under § 1983 for a failure to train and supervise police officers in the proper execution of an administrative inspection;  (7) a claim made under § 1983 for a failure to investigate and discipline police officers; (8) a claim made under § 1983 for retaliation and harassment in violation of the First Amendment; (9) a claim made under § 1983 for malicious prosecution and continued unlawful detention without probable cause in violation of the Fourth Amendment; (10)  a claim made under § 1983 for a failure to supervise in violation of the Fourth Amendment; (11) malicious, wanton conduct; (12) intentional or reckless infliction of emotional distress; (13) malicious abuse of process; and (14) loss of consortium. [Doc. 124.]

Plaintiff Palmer filed a Complaint against the Defendants on October 14, 2008. [Doc. 1.]  In her Amended Complaint, Palmer set forth the following causes of action: (1) a claim made under § 1983 for malicious prosecution and illegal attachment in violation of the Fourth and Fifth Amendments; and (2) a claim made under § 1983 for an unreasonable search and seizure in violation of the Fourth Amendment. [Doc. 26.]

On March 30, 2009, Plaintiff Rodriguez, along with Carmen Rodriguez, filed a motion for partial summary judgment on the Fourth Amendment unreasonable search and seizure claim. [Doc. 90 at 24, 148.]  On April 6, 2009, Plaintiff Palmer filed a motion for partial summary judgment on

Case No. 1:08-CV-1892
Gwin, J.

the same claim. [Doc. 101, 144.] The Defendants, in turn, moved for summary judgment on all of

the Plaintiffs' claims on April 17, 2009. [Doc. 117, 149.] The Defendants also opposed the motions

for partial summary judgment filed by the Plaintiffs, [Doc. 118], while the Plaintiffs opposed the

Defendants' summary judgment motion. [Doc. 126.] For the following reasons, the Court **GRANTS**

the partial summary judgment motion of the Rodriguez Plaintiffs, **DENIES** the partial summary

judgment motion of Plaintiff Palmer, and **GRANTS** the Defendants' summary judgment motion

with respect to the following claims: (1) Palmer's Fourth Amendment search and seizure claim; (2)

Palmer's Fourth and Fifth Amendment malicious prosecution and illegal attachment claim; (3) the

Rodriguez Plaintiffs' malicious, wanton conduct claim; (4) the Rodriguez Plaintiffs' intentional

infliction of emotional distress claim; (5) the Rodriguez Plaintiffs' malicious abuse of process claim;

and (6) the Rodriguez Plaintiffs' loss of consortium claim.

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c). The moving party has the initial burden of showing the absence of a genuine

issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of

the lawsuit." *Martingale, LLC v. City of Louisville,* 361 F.3d 297, 301 (6th Cir. 2004) (citing

*Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

-11-

Case No. 1:08-CV-1892
Gwin, J.

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings. FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale,* 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

In their partial motions for summary judgment, the Rodriguez Plaintiffs and Plaintiff Palmer

Case No. 1:08-CV-1892
Gwin, J.

argue that they are entitled to judgment as a matter of law as to their respective Fourth Amendment claims for an unreasonable search and seizure.  In their motion for full summary judgment, the Defendants argue that they are entitled to judgment as a matter of law on all of the Plaintiffs' claims. The Court considers the parties' arguments below, first examining the Plaintiffs' motions for partial summary judgment and then analyzing the Defendants' motion for summary judgment.

*A. Fourth Amendment Search and Seizure Claims Under 42 U.S.C. § 1983*

The Plaintiffs argue that there is no genuine issue of material fact with respect to their Fourth Amendment claims brought under § 1983.  In response, the Defendants contend that neither the Rodriguez Plaintiffs or Plaintiff Palmer are entitled to summary judgment with respect to these claims.[15/]  The Court **GRANTS** the partial summary judgment motion of the Rodriguez Plaintiffs and **DENIES** the partial summary judgment motion of Plaintiff Palmer.

1. Partial Summary Judgment Motion of the Rodriguez Plaintiffs

Section 1983 provides a remedy for deprivations of constitutional and federal statutory rights when those deprivations take place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (citing 42 U.S.C. § 1983); *see also Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005).  The purpose of a §1983 award "should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254 (1978).  Thus, § 1983 claims present the threshold issue of which, if any, of the plaintiff's constitutional rights have been violated by which state actors. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Preiser v. Rodriguez*, 411 U.S.

---

[15/]Additionally, the Defendants have filed a motion for judgment on the pleadings (or a motion to dismiss) Plaintiff Palmer's Complaint. [Doc. 147.] The Court will dispose of this motion when deciding the merits of the cross summary judgment motions.

Case No. 1:08-CV-1892
Gwin, J.

475, 494, 498-99 (1973).

State actors faced with a civil suit under § 1983 may be immune from liability for damages.

*See, e.g.*, *Richardson v. McKnight*, 521 U.S. 399, 412 (1997) (concluding that "private prison

[employees], unlike those who work directly for the government, do not enjoy immunity from suit

in a § 1983 case"). However, § 1983 generally provides state actors with a qualified, not an absolute,

scope of immunity.  *See Harlowe v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Qualified immunity

"protect[s] officials who are required to exercise their discretion and the related public interest in

encouraging the vigorous exercise of official activity." *Butz v. Economou*, 438 U.S. 478, 506 (1978).

Thus, the availability of the qualified immunity defense means that a court need not allow § 1983

damage suits to proceed to trial, but can dismiss them upon the showing of a properly-supported

motion for summary judgment.  *Id.* at 508.

As a matter of law, qualified immunity shields a state actor from civil damages in appropriate

cases:

> Reliance on the objective reasonableness of an official's conduct, as measured by
> reference to clearly established law, should avoid excessive disruption of government
> and permit the resolution of many insubstantial claims on summary judgment.  On
> summary judgment, the judge appropriately may determine, not only the currently
> applicable law, but whether that law was clearly established at the time an action
> occurred.  If the law at the time was not clearly established, an official could not
> reasonably be expected to anticipate subsequent legal developments, nor could he
> fairly be said to "know" that the law forbade conduct not previously identified as
> unlawful.  Until this threshold immunity question is resolved, discovery should not
> be allowed.  If the law was clearly established, the immunity defense ordinarily
> should fail, since a reasonably competent public official should know the law
> governing his conduct.  Nevertheless, if the official pleading the defense claims
> extraordinary circumstances and can prove that he neither knew nor should have
> known of the relevant legal standard, the defense should be sustained.  But again, the
> defense would turn primarily on objective factors.
>
> _____[B]are allegations of malice should not suffice to subject government officials either
> to the costs of trial or to the burdens of broad-reaching discovery.  We therefore hold

-14-

Case No. 1:08-CV-1892
Gwin, J.

> that government officials performing discretionary functions generally are shielded from liability for damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.

*Harlowe*, 457 U.S. at 818-19, 817-818.

The Sixth Circuit has distilled *Harlowe* to require a § 1983 plaintiff to make a three-step showing to avoid dismissal on qualified immunity grounds. *See Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (mandating a two-step sequence for resolving government officials' qualified immunity claims by asking courts to first decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right and then, if the plaintiff has satisfied this first step, to determine whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct).

First, the plaintiff must show that a state actor has violated his constitutional rights. *Id.*; *see also Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (requiring courts faced with a qualified immunity claim to first assess the presentation of the asserted constitutional claim "to weed out such suits which fail the test"). Second, the plaintiff must show that the violation involved a "clearly established constitutional right of which a reasonable person would have known."[16] *Feathers*, 319 F.3d at 848. Finally, the plaintiff must demonstrate that the action allegedly taken by the government official was objectively unreasonable in light of the "clearly established constitutional rights." *Id.*

In this case, the Rodriguez Plaintiffs would prevail on their partial summary judgment motion

---

[16] For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "Although it need not be the case that 'the very action in question has been previously held unlawful, . . . in the light of pre-existing law the unlawfulness must be apparent.' " *Id.* (quoting *Anderson*, 483 U.S. at 640). As the Supreme Court noted in *Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002), an action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.

Case No. 1:08-CV-1892
Gwin, J.

if they could satisfy the three-part test described above with respect to their Fourth Amendment

claim of unreasonable search and seizure.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses,

papers and effects, against unreasonable searches and seizures." *Farm Labor Org. Comm. v. Ohio*

*State Highway Patrol*, 308 F. 3d 523, 543 (6th Cir. 2002) (citing *United States v. Place*, 462 U.S.

696, 700-701, 709-710)(1983) (holding that even where the initial seizure of someone's property is

lawful, the prolonged seizure of the property may render the seizure unreasonable)).

Pursuant to the Fourth Amendment, law enforcement officers may not seize an individual

prior to establishing probable cause for the arrest. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*,

370 F. 3d 630, 636 (6th Cir. 2004).  Probable cause necessary to justify an arrest is defined as

"whether at that moment the facts and circumstances within [the officers'] knowledge and of which

they had reasonably trustworthy information were sufficient to warrant a prudent man in believing

that the [arrestee] had committed or was committing an offense." *Radvansky v. City of Olmsted*, 393

F. 3d 291, 302 (6th Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91(1964)).  The determination

of the existence of probable cause "presents a jury question, unless there is only one reasonable

determination possible." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

Seizures[17] of property also require probable cause. *See United States v. Smith*, 510 F.3d 641,

647-48 (2007).  The Fourth Amendment protects against unreasonable interferences in property

interests regardless of whether there is an invasion of privacy. *Soldal v. Cook Cty.*, 506 U.S. 56, 62-

64 (1992) ("Although lacking a privacy component, the property rights in both instances nonetheless

were not disregarded, but rather were afforded Fourth Amendment protection.").  The Supreme

_____

[17]/A seizure results if "there is some meaningful interference with an individual's possessory interests in that
property." *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992).

Case No. 1:08-CV-1892
Gwin, J.

Court "has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *Farm Labor*, 308 F.3d at 543 (citing *Place*, 462 U.S. at 701). The impoundment of a vehicle is a seizure within the meaning of the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F. 3d 858, 862 (9th Cir. 2005).

Probable cause is not required for some brief detentions of persons or property. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). These detentions may be based upon reasonable suspicion falling short of probable cause, provided that they are "minimally intrusive." *Place*, 462 U.S. at 706; *see also United States v. Saperstein*, 723 F. 2d 1221, 1231 (6th Cir. 1983) (explaining that "seizures of personal effects when based on anything less than probable cause" are permitted only to the extent that they satisfy the standards for reasonableness applicable to "*Terry*-type investigative detention[s]").

The Sixth Circuit has employed the following two-part test to determine whether a seizure of property without probable cause is reasonable under the Fourth Amendment: (1) whether the detaining officer had "a reasonable and articulable suspicion that the property he wishes to seize is connected with criminal activity," *Bennett v. City of Eastpointe*, 410 F.3d 810, 825 (6th Cir. 2005) (citations omitted); and (2) whether "the scope of the seizure [was] reasonable, both in duration and in intrusiveness,"*id.* (citations omitted). With respect to the second prong, a court must ascertain whether (1) the detention was "sufficiently limited in time;" and (2) "the investigative means used [were] the least intrusive means reasonably available." *Id.* (citations omitted).

In this case, Common Pleas Judge Synenberg found that Plaintiff Rodriguez's property was seized without probable cause and dismissed the case against Rodriguez based on this finding. Two

-17-

Case No. 1:08-CV-1892
Gwin, J.

other factors indicate that there was no probable cause for the seizure of Rodriguez's property. First, the Defendants arrested Rodriguez for receiving stolen property in violation of O.R.C. § 2913.51. That Ohio law makes it illegal to "receive, retain, or dispose of property of another *knowing or having reasonable cause to believe* that the property has been obtained through commission of a theft offense." O.R.C. § 2913.51 (emphasis added). No evidence shows that Rodriguez had cause to believe that the stolen truck in question had been obtained through a theft offense. Further, the Defendants allege that Rodriguez's tow trucks were properly towed pursuant to Cleveland Codified Ordinance § 677A. This statute (which has had a "tortured" history and is potentially preempted by 49 U.S.C. § 14501),[18] however, does not authorize the towing of vehicles. Additionally, the § 677A citations for Rodriguez's tow trucks were issued on July 14, 2006 – after the vehicles were already seized by the Defendants.

Moreover, the detention of property in this case fails to satisfy the *Terry*-type inquiry for seizures of property based upon less than probable cause. Information from an anonymous informant can provide reasonable suspicion for a *Terry*-type detention when the tip bears some reliability. *Alabama v. White*, 496 U.S. 325, 326-27 (1990). Courts assess the reliability of an anonymous tip under the totality of the circumstances test. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). "Typically, courts have found reasonable suspicion for a brief detention of persons or property only when the police know the tipster to be reliable or when the tip contains independently verifiable details showing knowledge." *Northrop v. Trippett*, 265 F.3d 372, 381 (6th Cir. 2001); *see also United States v. Taylor*, 162 F.3d 12, 19-20 (1st Cir.1998) (finding reasonable suspicion to stop a suspect's

_____

[18]/*City of Cleveland v. Fox*, 761 N.E.2d 126, 128 (Ohio Ct. App. 2001) ("Thus, because [Cleveland Codified Ordinance § ] 677A.14 relates to a price, route, or service of the towing industry, the plain language of Section 14501(c)(1) preempts it. . . .").

Case No. 1:08-CV-1892
Gwin, J.

car because a tip from a  known, reliable informant provided specifics as to the make and color of

the car, its registration number, description of occupants, and the neighborhood where the

individuals were making drug drops).  The tip from the anonymous informant in this case – that a

white dump truck located in a side-lot next to M&M was stolen – does not contain independently

verifiable details showing knowledge.  Most, if not all M&M vehicles were located in this lot.

Moreover, the anonymous informant never mentioned that the stolen vehicle in question had cut

marks in places where large equipment would normally be – a significant and obvious feature of the

dump truck that would have been apparent to the tipster, as it was apparent to the officers who had

arrived on the scene.

Further, even if this tip was reliable, providing reasonable suspicion for the temporary

detention of the allegedly stolen dump truck, the seizure of all the remaining M&M vehicles was

certainly not the least intrusive means of conducting the investigation in this case; neither was the

detention of all of these vehicles for approximately seven months and for nearly a month following

the dismissal of the claims against Plaintiff Rodriguez.

The Defendants cannot rely on the argument that the warrantless seizure of the vehicles from

M&M was proper because it was done during a routine administrative inspection.  "[S]earches

pursuant to criminal as well as administrative investigations must comport to the strictures of the

Fourth Amendment."  *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008) (citations omitted).

The Supreme Court has held that law enforcement could not ignore the requirement for a warrant

where "the primary purpose [of the search or seizure] was to detect evidence of ordinary criminal

wrongdoing."  *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).  An administrative inspection

may not be used to gather evidence as part of what is, in actuality, a criminal investigation.  *New*

Case No. 1:08-CV-1892
Gwin, J.

*York v. Burger*, 482 U.S. 691, 716 n. 27 (1987); *see also United States v. Johnson*, 994 F.2d 740, 742 (10th Cir. 1993) (holding that an administrative inspection is a "sham" where it is "a pretext solely to gather evidence of criminal activity").  Further, the Sixth Circuit has held that when officials target a particular individual for an inspection and when that inspection carries "with it the very real threat of criminal sanctions," *Jacob v. Twp. of W. Bloomfield*, 531 F.3d 385, 390 (6th Cir. 2008), the inspection is criminal in nature – necessitating a warrant – and not administrative.

In this case, the Defendant officers received an anonymous tip that Plaintiff Rodriguez had a stolen vehicle in his possession.  Rather than obtaining a warrant, the Defendant officers waited for some time and then went to M&M to conduct what they termed an administrative inspection.  As part of this inspection, a number of uniformed officers obtained access to M&M, examined the premises, "processed" all of the tow-trucks located on the lot, arrested Plaintiff Rodriguez, and ultimately confiscated all of the tow vehicles from the premises.  The Defendants targeted Rodriguez and went to M&M with the purpose of searching for the allegedly stolen dump truck and locating any additional contraband.  Because the Defendants should have obtained a search warrant prior to conducting this type of inspection, and because they had neither probable cause nor reasonable suspicion to seize and subsequently retain the M&M tow trucks, the seizure of the tow trucks violates the Fourth Amendment.

Moreover, after arresting the Plaintiff and seizing half of his property on July 7, 2006, the Defendants came back a week later, again without a warrant, and arrested the Plaintiff again, while seizing the remainder of his property.  The basis of the second arrest was the allegation that an engine in one of the tow trucks that the Defendants had "processed" was stolen.  The Defendants had no evidence to suggest that the Plaintiff had committed a crime aside from this information, which

-20-

Case No. 1:08-CV-1892
Gwin, J.

they obtained through a search and seizure that violated the Fourth Amendment.

As Plaintiff Rodriguez has demonstrated that the Defendants' conduct violated his Fourth Amendment rights, the Court finds that the Plaintiff has satisfied the first prong of the qualified immunity test.  The remaining inquiry is whether the violation involved a "clearly established constitutional right of which a reasonable person would have known," *Feathers*, 319 F.3d at 848, and whether the violation was objectively unreasonable in light of the "clearly established constitutional rights," *id.*

The requirement that government officials must obtain a search warrant before making an unwelcome intrusion onto private property has been clearly established law for over 20 years.  *See O'Connor v. Ortega*, 480 U.S. 709, 720 (1987) ("[I]t is settled . . . that 'except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant.' " (quoting *Mancusi v. DeForte*, 392 U.S. 364, 370 (1968))). Where exceptions do exist to this general rule, they exist "[o]nly in those exceptional circumstances in which special needs, *beyond the normal need for law enforcement,* make the warrant and probable-cause requirement impracticable." *Id.* (quoting *New Jersey v. T.L. O.,* 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in the judgment)) (emphasis added).  Moreover, as mentioned above, the notion that either probable cause or reasonable suspicion (depending on the circumstances of the search) is required for a constitutional seizure of persons or property has been clearly established law for over 20 years.  Thus, in this case, the searches and seizures that took place on both July 7 and July 13 involved a "clearly established constitutional right of which a reasonable person would have known," *Feathers*, 319 F.3d at 848.

Additionally, the constitutional violation was objectively unreasonable in light of the Fourth

-21-

Case No. 1:08-CV-1892
Gwin, J.

Amendment.  The Defendants' conduct not only disregarded Plaintiff Rodriguez's constitutional rights, but also it violated the well-established practices of the CPD.  A 1984 memorandum from the then-Chief of Police William T. Hanton specifically states that officers conducting inspections pursuant to § 601.15 must obtain search warrants if "probable cause is developed to warrant a search of the premises for contraband, stolen vehicle parts, or personal property." [Doc. 90-7 at 1.] The same memorandum also states that § 601.15 inspections were to be conducted by the "minimum number of officers required and at a time and in such a manner that [would] minimize the interference with business operations, [*id.* at 2], and for the sole purpose of locating stolen motor vehicles.

The Defendants' conduct also violated General Police Order 2.2.04, which described the need for warrants in conjunction with searches and seizures, [Doc. 90-8], General Police Order 4.1.01 concerning the need to release towed vehicles within 30 days even if the officers had probable cause to believe that the vehicles were connected with a crime and contained evidence or were used as a criminal tool, [Doc. 90-9], and Ohio Revised Code § 2933.43.

Thus, the Defendants in this case are not entitled to qualified immunity.  As there is no genuine issue of material fact with respect to their claim of a Fourth Amendment violation based on an unreasonable search and seizure, the Rodriguez Plaintiffs are entitled to partial summary judgment on this claim.

2. Partial Summary Judgment Motion of Plaintiff Palmer

Plaintiff Palmer, in a brief motion for partial summary judgment, argues that the search of M&M and the seizure of the M&M tow trucks violates her Fourth Amendment rights.  The Defendants cross-move for summary judgment on this claim.  The Court determines that the

Case No. 1:08-CV-1892
Gwin, J.

Defendants, and not Plaintiff Palmer, are entitled to summary judgment on this claim, as well as on

the other claim brought by Palmer against the Defendants – a claim brought under § 1983 for

malicious prosecution and illegal attachment in violation of the Fourth and Fifth Amendments.

Under Supreme Court and Sixth Circuit case law, § 1983 claims are subject to Ohio's two-

year statute of limitations governing personal injury actions.  *See* _Owens v. Okure_, 488 U.S. 235,

249-50 (1989) ("We accordingly hold that where state law provides multiple statutes of limitations

for personal injury actions, courts considering § 1983 claims should borrow the general or residual

statute for personal injury actions."); *Banks v. City of Whitehall*, 344 F.3d 550, 555 (6th Cir. 2003)

(upholding the district court's grant of summary judgment for the defendants because "[n]one of the

defendants' actions which the plaintiffs complain of occurred within two years of the filing of this

lawsuit, nor were the plaintiffs prevented from timely discovering any actions of the defendants that

could conceivably be redressed by a lawsuit brought under section 1983"); _Browning v. Pendleton_,

869 F.2d 989, 991-92 (6th Cir.1989) (holding that "the appropriate statute of limitations for 42

U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code Ann. § 2305.10,

which requires that actions for bodily injury be filed within two years after their accrual").

The § 1983 claim for a violation of the Fourth Amendment on which Palmer requests

summary judgment is based on the search of M&M and the seizure of M&M tow trucks that took

place on July 7 and July 13, 2006.  In her motion for partial summary judgment, Palmer states that

she learned of these events in July 2006. [Doc. 101 at 7.] Under Sixth Circuit precedent, Palmer's

cause of action accrued no later than July 2006. *See Eidson v. State of Tenn. Dep't of Children's*

*Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations and internal quotes omitted) ("[I]n determining

when the cause of action accrues in section 1983 actions, we have looked to what event should have

-23-

Case No. 1:08-CV-1892
Gwin, J.

alerted the typical lay person to protect his or her rights."). Thus, Palmer should have brought this claim no later than July 2008. As she filed her Complaint on October 14, 2008, the Court is barred from considering it due to the statute of limitations. The Court therefore grants summary judgment in favor of the Defendants on this claim.

The Defendants have moved for summary judgment on the second and final claim set out by Plaintiff Palmer in her Complaint – a claim brought under § 1983 for malicious prosecution and illegal attachment in violation of the Fourth and Fifth Amendments. Palmer was never prosecuted in this case and any cause of action that she had in connection with the seizure of the M&M tow trucks accrued in July 2006. Accordingly, for the reasons mentioned above, the Court grants summary judgment in favor of the Defendants on this claim.

*B. Defendants' Motion for Summary Judgment*

The Defendants specifically request judgment as a matter of law on the following remaining claims brought by the Rodriguez Plaintiffs: (1) § 1983 claim for failing to train and supervise police officers in the proper execution of an administrative inspection; (2) § 1983 claim for failing to investigate and discipline police officers; (3) § 1983 claim for failing to supervise in violation of the Fourth Amendment; (4) retaliation and harassment in violation of the First Amendment; (5) malicious prosecution and continued unlawful detention without probable cause in violation of the Fourth Amendment; (6) violation of right to Due Process based on an intentional omission of exculpatory evidence to secure indictments; (7) malicious, wanton conduct; (8) intentional or reckless infliction of emotional distress; (9) malicious abuse of process; and (10) loss of

-24-

Case No. 1:08-CV-1892
Gwin, J.

consortium.[19/]

1. Failure to Investigate, Train and Supervise

The Court declines to grant summary judgment in favor of the Defendants on the Rodriguez Plaintiffs' claims regarding failures to investigate, train, and supervise, as there are genuine issues of material fact remaining that must be resolved at trial.

"Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (citations omitted). Instead, "the supervisors must have actively engaged in unconstitutional behavior." *Id.* (citations omitted).

Municipalities and local government entities are considered "persons" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). As a result, these entities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* Local governments, "like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690-91.

Local government entities can also be sued under § 1983 on the basis of failure to train "where the failure to train amounts to deliberate indifference to the rights of persons with whom the

---

[19/]In their motion for summary judgment, the Defendants do not appear to discuss the following claims asserted by the Rodriguez Plaintiffs in their Third Amended Complaint: (1)§ 1983 claim for a failure to intercede or intervene; (2)§ 1983 claim for conscience-shocking and outrageous conduct in violation of the Fourteenth Amendment; and (3) § 1983 claim for false arrest and imprisonment in violation of the Fourth Amendment. As a result, the Court will not grant summary judgment in favor of the Defendants on these claims.

Case No. 1:08-CV-1892
Gwin, J.

police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To establish deliberate indifference, a plaintiff must demonstrate either that a municipality or local government (1) failed "to provide adequate training in light of foreseeable consequences that could result from the lack of instruction;" or (2) failed "to act in response to repeated complaints of constitutional violations by its officers." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). The Sixth Circuit has held that a failure to train police officers regarding warrant-less searches and subsequent arrests could lead "a trier of fact [to] conclude that the [d]efendant [c]ity's training . . . was 'inadequate to the tasks that officers must perform,' and that this inadequacy reflected the [c]ity's 'deliberate indifference' to the Fourth Amendment rights of those who come in contact with the [city's] police." *Cherrington v. Skeeter*, 344 F.3d 631, 647 (6th Cir. 2003) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).

In this case, the Defendants have failed to demonstrate that there is no genuine issue of material fact as to the supervisory liability of the Defendants generally and of Defendant Hall in particular. The Defendants primarily rely on the argument that they are entitled to qualified immunity in urging the Court to grant summary judgment in their favor on this claim. As there are questions of fact remaining regarding the type and level of the Defendants' involvement in the violations of Rodriguez's constitutional rights, the Court declines to grant summary judgment on this claim.

Further, the Defendants have not shown that there are no genuine issues of material fact with respect to the question of whether the City of Cleveland (or the CPD, headed by Defendant McGrath) had a well-established custom or practice of using administrative inspections of regulated businesses as a pretext or guise to gather evidence of criminal activity without obtaining a warrant. The

-26-

Case No. 1:08-CV-1892
Gwin, J.

Defendants allege that this claim must fail because there was no underlying constitutional violation of Plaintiff Rodriguez's constitutional rights – an argument that fails in light of the Court's finding that the Defendants did violate Rodriguez's Fourth Amendment rights. The Defendants also make no effort, taking aside blanket and conclusory statements, to disprove the Rodriguez Plaintiffs' evidence concerning the City of Cleveland's potentially unconstitutional practices regarding administrative inspections. Because there are issues of fact with respect to this claim that must be resolved at trial, the Court does not grant summary judgment in favor of the Defendants on this claim.

Finally, there are genuine issues of material fact regarding the failure to train claim brought by the Rodriguez Plaintiffs. For instance, the Rodriguez Plaintiffs have presented testimony and evidence suggesting that the City of Cleveland police officers, including those involved in this case, did not receive proper training from the City of Cleveland and from Defendant McGrath regarding the execution of warrantless searches and seizures, particularly in the context of § 601.15 inspections. As a result, the Defendants are not entitled to summary judgment on this claim.

2. Retaliation and Harassment in Violation of the First Amendment

The Court declines to grant summary judgment in favor of the Defendants on this claim, as the Defendants have not demonstrated that there are no genuine issues of material fact with respect to this claim.

To prove a claim for retaliation, a plaintiff must establish the following elements: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in

Case No. 1:08-CV-1892
Gwin, J.

part as a response to the exercise of the plaintiff's constitutional rights." *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Id.* at 681-82 (citing *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)). "[P]roof of an official's retaliatory intent rarely will be supported by direct evidence of such intent . . . . Accordingly, 'claims involving proof of a [defendant's] intent seldom lend themselves to summary disposition.'" *Id.* at 682 (citing *Curtis v. Story*, No. 87-5988, 1988 WL 125361, at *3 (6th Cir. Nov. 25, 1988)).

The defense of qualified immunity has generally been rejected by the courts in conjunction with retaliation claims. "[C]ourts that have considered qualified immunity in the context of a retaliation claim have focused on the retaliatory intent of the defendant," *id.*, and have held that "[t]he unlawful intent inherent in such a retaliatory action places it beyond the scope of a police officer's qualified immunity if the right retaliated against was clearly established," *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990); *see also Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir.1990) (stating that "government officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely, anyone who takes an oath of office knows-or should know-that much").

In this case, Plaintiff Rodriguez alleges that following the filing of this lawsuit – a constitutionally protected activity[20] – he has been subject to retaliation and harassment including investigations of his new towing business and of his business relationships with other towing

---

[20] "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983).

-28-

Case No. 1:08-CV-1892
Gwin, J.

companies, the placement of "holds" on his vehicle registrations with the BMV, and the seemingly

arbitrary denial of his application for a tow truck license.

The Defendants argue that they are entitled to summary judgment on this claim because the

identities of the officers involved in the allegedly harassing and retaliatory activities have not been

determined and because Rodriguez did not suffer any injury. With this argument, the Defendants

necessarily concede that there are genuine issues of material fact regarding the involvement of the

Defendants in the abovementioned incidents. Moreover, the fact that Rodriguez may not have

suffered actual damages does not bar his claim. "[T]he Supreme Court has held that, in the context

of a § 1983 action, 'compensatory damages may include . . . such injuries as impairment of

reputation . . . , personal humiliation, and mental anguish and suffering.'" *Bloch*, 156 F.3d at 679

(internal quotations omitted) ((citing *Memphis Cmty. School Dist. v. Stachura*, 477 U.S. 299, 307

(1986) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974))). Thus, the Court denies the

Defendants' summary judgment motion with respect to this claim.

### 3. Malicious Prosecution and Continued Unlawful Detention Without Probable Cause

The Court denies the Defendants' motion for summary judgment on this claim[21] because the

Rodriguez Plaintiffs have shown sufficient facts to withstand such a motion.

According to the Sixth Circuit, the "subset of malicious prosecution claims which allege

continued detention without probable cause must be pursued and analyzed under the Fourth

Amendment." *Gregory*, 444 F.3d at 750. That court has also determined that "the requirement of

probable cause is one of the cornerstones of Fourth Amendment protection. Thus, a reasonable

---

[21] As the analysis for this claim and for the Rodriguez Plaintiffs' claim concerning the intentional omission of exculpatory evidence to secure indictments is identical, the Court considers both claims together at this point and declines to grant summary judgment in favor of the Defendants on either claim.

Case No. 1:08-CV-1892
Gwin, J.

police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures." *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999); *see also* *Gregory*, 444 F.3d at 750 (holding that even if probable cause existed at the time of arrest, the withholding of exculpatory evidence can destroy probable cause for continued detention).

In this case, there exist genuine issues of material fact about whether some or all of the Defendants withheld exculpatory information in order to indict Plaintiff Rodriguez, arrest him, and seize (and continue the detention of) his property. Judge Synenberg found that there was no probable cause to arrest Rodriguez or to seize his property. There is also evidence that the Defendants did not fully investigate whether Rodriguez owned the vehicle suspected of being stolen. The Court thus denies the Defendants' summary judgment motion with respect to this claim.

4. State Law Claims

The Defendants argue that they are entitled to immunity on the Rodriguez Plaintiffs' state-law claims under O.R.C. § 2744.03, the Ohio statute providing defenses and immunities to employees of political subdivisions for claims that result from their governmental functions. O.R.C. § 2744.03. The statute explicitly lists exceptions to the immunity, however, including if "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(6)(b). As described above, the Plaintiffs have presented sufficient evidence at the summary judgment stage to show that some or all of the Defendants withheld exculpatory evidence more than negligently. On this basis, the Defendants are stripped of immunity for the state-law claims.

**a. Malicious, Wanton Conduct**

Case No. 1:08-CV-1892
Gwin, J.

The Court determines that the Defendants are entitled to summary judgment on this claim,
as there is no cause of action under Ohio law for malicious, wanton conduct.  Plaintiff Rodriguez
brought this claim under the Ohio statute setting out the defenses and immunities of employees of
political subdivisions for claims that result from their governmental functions.  The Court dealt with
the effect of the statute on this case in the previous section.

**b. Intentional or Reckless Infliction of Emotional Distress**

The Court grants summary judgment in favor of the Defendants on this claim, as there are
no genuine issues of material fact that must be resolved at trial.  In order to recover on a claim of
intentional infliction of emotional distress, a plaintiff must prove four elements:

> (1) that the actor either intended to cause emotional distress or knew or should have
> known that actions taken would result in serious emotional distress to the plaintiff,
> (2) that the actor's conduct was so extreme and outrageous as to go "beyond all
> possible bounds of decency" and was such that it can be considered as "utterly
> intolerable in a civilized community," (3) that the actor's actions were the proximate
> cause of plaintiff's psychic injury, and (4) that the mental anguish suffered by
> plaintiff is serious and of a nature that "no reasonable man could be expected to
> endure it."

*Roelen v. Akron Beacon Journal*, 199 F. Supp. 2d 685, 696 (N.D. Ohio 2002), (quoting *Pyle v. Pyle*,
463 N.E. 2d 98, 103 (Ohio Ct. App. 1983)).  Conduct that is merely cruel or insensitive does not rise
to the level of extreme and outrageous conduct necessary to state a claim for intentional infliction
of emotional distress.  *Roelen*, 199 F. Supp. 2d at 696.

Absent contemporaneous physical injury, compensable emotional distress must be severe and
disabling. *See Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983).  Plaintiffs claiming severe and
debilitating emotional injury must present some guarantee of genuineness in support of their claim,
such as expert evidence, to prevent a court from granting summary judgment in favor of the
defendant. *See, e.g., Knief v. Minnich*, 658 N.E.2d 1072, 1075 (Ohio Ct. App. 1995).  This Court

Case No. 1:08-CV-1892
Gwin, J.

must determine whether an alleged injury is sufficiently serious and whether the Defendants' alleged conduct was sufficiently extreme and outrageous for the claim to go forward. *Popson v. Danbury Local School Dist.*, No. 304-cv-7056, 2005 WL 1126732, at *12 (N.D. Ohio April 28, 2005); *Kovac v. Lowe's Home Ctrs., Inc.*, No. 5:05-cv-2276, 2006 WL 1644336, at *9 (N.D. Ohio June 7, 2006.)

The Defendants' conduct, when examined from a standpoint that is most favorable to the Plaintiff, was not so extreme and outrageous as to go "beyond all possible bounds of decency" and was not such that it can be considered as "utterly intolerable in a civilized community." Moreover, Plaintiff Rodriguez has not presented any concrete evidence, beyond bare assertions, to demonstrate that he suffered sufficiently serious mental anguish as a result of the Defendants' conduct. Thus, the Court grants summary judgment in favor of the Defendants on this claim.

**c. Malicious Abuse of Process**

The Court grants the Defendants' summary judgment motion on this claim, as there are no genuine issues of material fact to be resolved at trial.

To establish an abuse of process claim, a plaintiff must show that: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Yaklevich v. Kemp, Schaeffer, & Rowe Co.*, 626 N.E.2d 115, 116 (1994)). To demonstrate the presence of "ulterior purpose," a plaintiff must establish that the defendant "used a legal proceeding as a 'club.'" *Magnum Towing & Recovery v. City of Toledo*, No. 07-4212, 2008 WL 2744631, at* 5 (6th Cir. July 15, 2008) (citations omitted); *see also Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (1996) (internal quotation

Case No. 1:08-CV-1892
Gwin, J.

marks omitted) ("[T]he improper purpose usually takes the form of coercion to obtain a collateral

advantage, not properly involved in the proceeding itself, such as the surrender of property or the

payment of money, by the use of the process as a threat or a club.").

An abuse-of-process claim will not survive a motion to dismiss when it is supported only by

"conclusory allegations regarding the defendants' ulterior motives with no facts to support those

contentions." *Graham v. Best Buy Stores, L.P.*, No. 07-4139, 2008 WL 4679547, at *6 (6th Cir.

Oct. 22, 2008) (citing *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999)).  The Sixth Circuit has

also noted that "there is no liability [for abuse of process] where the defendant has done nothing

more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.*

(citing *Hahn*, 190 F.3d at 718) (internal quotation marks omitted).

No party here disputes that Plaintiff Rodriguez was subject to a legal proceeding.  However,

Plaintiff Rodriguez presents no evidence to support a finding that the proceeding against him was

"perverted" for the achievement of an "ulterior purpose."  Although the Defendants may not have

had probable cause to arrest Rodriguez or to seize his property, they initiated the legal proceeding

against him to obtain his conviction for offenses that he allegedly committed and not for another

collateral or improper purpose.  As a result, the Court grants the Defendants' summary judgment

motion with respect to this claim.

**d. Loss of Consortium**

The Court grants summary judgment in favor of the Defendants on this claim.  Under Ohio

law, a spouse cannot recover for loss of consortium if the parties were not husband and wife when

the cause of action accrued.  *Salyer v. Riverside United Methodist Hosp.*, N. 01-AP-1196, 2002 WL

1338677, at *5 (Ohio Ct. App. June 20, 2002); *see also Anderson v. Brush-Wellman*, 603 N.E.2d

Case No. 1:08-CV-1892
Gwin, J.

284, 287 (Ohio Ct. App. 1991).  Ohio courts have declined to abrogate this rule in cases where a couple was engaged at the time that the cause of action accrued.  *See Reygaert v. Palmer*, No. 9296, 1986 WL 1340, at *4 (Ohio Ct. App. Jan. 29, 1986); *see also Haas v. Lewis*, 456 N.E.2d 512, 513 (Ohio Ct. App. 1982) (holding that a loss of consortium claim was unavailable when the couple lived together at the time that the cause of action accrued and subsequently married).  Because Carmen Rodriguez did not marry Jose Rodriguez until July 29, 2006 – over two weeks after the cause of action (the searches, arrests, and seizures) in this case accrued – she has no claim for a loss of consortium.  Accordingly, the Court dismisses Carmen Rodriguez from this suit and grants summary judgment in favor of the Defendants on this claim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the partial summary judgment motion of the Rodriguez Plaintiffs, **DENIES** the partial summary judgment motion of Plaintiff Palmer, and **GRANTS** the Defendants' summary judgment motion with respect to the following claims: (1) Palmer's Fourth Amendment search and seizure claim; (2) Palmer's Fourth and Fifth Amendment malicious prosecution and illegal attachment claim; (3) the Rodriguez Plaintiffs' malicious, wanton conduct claim; (4) the Rodriguez Plaintiffs' intentional infliction of emotional distress claim; (5) the Rodriguez Plaintiffs' malicious abuse of process claim; and (6) the Rodriguez Plaintiffs' loss of consortium claim.

IT IS SO ORDERED.


Dated: June 1, 2009                                    s/          *James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE